UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CURTIS MITCHELL,                              :

                         Plaintiff,           :
                                                      05 Civ. 5792 (JSR)(HBP)
        -against-                             :
                                                      REPORT AND
DEPARTMENT OF CORRECTION,_____               :       RECOMMENDATION
CITY OF NEW YORK, et al.,
                                              :

                         Defendants.          :
----------------------------------X

              PITMAN, United States Magistrate Judge:


              TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.  Introduction


              Pro se plaintiff Curtis Mitchell, an inmate currently

in the custody of the New York State Department of Correctional

Services, brings this action pursuant to 42 U.S.C. § 1983 against

the New York City Department of Correction ("DOC"), Corrections

Officer Lewis G., Captain William D., and Captain Scollo C.[1]

Plaintiff asserts defendants violated both his Fourth Amendment

rights by subjecting him to a random drug test and his procedural

due process rights under the Fourteenth Amendment through certain

deficiencies in his disciplinary hearing, which resulted in a

_____

[1]The record does not provide the full name of any of the
individual defendants.

penalty of sixty days punitive segregation at the Otis Bantum Correctional Center at Rikers Island.  By notice of motion dated March 14, 2007, all defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment pursuant to Rule 56.  For the reasons set forth below, I respectfully recommend that defendants' motion be granted in part and denied in part.

## II.  Facts[2]

### A.  Relevant DOC Regulations

---

[2]The undisputed facts are set forth herein.  These facts are drawn primarily from defendants' Local Rule 56.1 Statement of Material Facts ("56.1 Statement"), the exhibits attached to their Notice of Motion, and plaintiff's Verified Complaint (Docket Items 2, 20).  Plaintiff has not filed a counter-statement as required by Local Rule 56.1.  Consequently, I may deem the facts set forth in defendants' 56.1 Statement as admitted.  <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 72 (2d Cir. 2001).

However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and, thus, "it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a counter-statement under Local Rule 56.1]."  <u>Holtz v. Rockefeller & Co., Inc.</u>, <u>supra</u>, 258 F.3d at 73. Because of the limited record in this case and because the material facts are readily apparent from plaintiff's Verified Complaint, I exercise this discretion "to overlook" plaintiff's failure to comply with the local rules to the extent that plaintiff's Verified Complaint and the attached exhibits address the issues raised in defendants' 56.1 Statement.  <u>See</u> <u>Am. Med. Ass'n v. United Healthcare Corp.</u>, 00 Civ. 2800 (LMM), 2007 WL 1771498 at *3 (S.D.N.Y. June 18, 2007)(conducting review of the record "to fill [] gaps" resulting from plaintiff's failure to file a 56.1 counter-statement in response to defendants' 56.1 statement).  To the extent that defendants' 56.1 Statement is not controverted by evidence, I deem it admitted.  <u>See</u> <u>Johnson v. New York</u>, 04-CV-1070 (DLI)(LB), 2007 WL 764514 at *6 (E.D.N.Y. Mar. 9, 2007)(considering uncontroverted portions of defendant's 56.1 Statement as admitted where <u>pro se</u> plaintiff did not file 56.1 counter-statement).

Finally, I note that plaintiff's failure to file such a counter-statement does not relieve defendants from "adduc[ing] admissible evidence in the record to support the factual assertions contained in [their] Rule 56.1 Statement, as [plaintiff] 'is not required to rebut an insufficient showing.'" <u>NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.</u>, 07 Civ. 3378 (GEL), 2007 WL 4233008 at *1 n.1 (S.D.N.Y. Nov. 30, 2007), <u>quoting</u> <u>Giannullo v. City of New York</u>, 322 F.3d 139, 141 (2d Cir. 2003).

In December 2004, DOC promulgated the Inmate Drug
Testing Directive ("Directive 4535") to establish policies and
procedures for conducting drug testing of inmates (Defendants'
Rule 56.1 Statement, dated Jan. 10, 2007 ("Def. 56.1") at ¶ 2;
Directive 4535, dated Dec. 27, 2004 ("Directive 4535") at 1,
annexed as Exhibit A to Declaration of Carl DiCarlo, Esq., dated
Jan. 9, 2007 ("DiCarlo Decl.")).  Pursuant to Directive 4535,
inmates may be ordered to provide urine specimens for random drug
testing (Def. 56.1 at ¶ 2; Directive 4535 at § III.C.3).  Direc-
tive 4535 further provides that inmates who test positive for
illegal drugs will be issued an infraction and are subject to
disciplinary penalties of up to ninety days punitive segregation
(Directive 4535 at § III.F.1.c).

On December 27, 2004, DOC distributed an Inmate Rule
Supplement entitled "Drug Testing" (the "Drug Rule Supplement"),
which sets forth Rules 130.10 and 130.11 (Def. 56.1 at ¶ 3; Drug
Rule Supplement, dated Dec. 27, 2004 (the "Drug Rule Supple-
ment"), annexed as Exhibit B to DiCarlo Decl.).  Rule 130.10
mandates that inmates provide urine specimens when they are
notified that they have been selected for drug testing, and Rule
130.11 prohibits testing positive for illegal drugs/substances
(Drug Rule Supplement).  The Drug Rule supplement also distin-
guishes between random drug testing, which is defined as testing
based on a list of names randomly generated on a daily basis,

from testing based on reasonable suspicion (Drug Rule Supplement).

Infractions issued for violating Rule 130.11 are processed pursuant to DOC's Inmate Disciplinary Due Process Directive ("Directive 6500") (Def. 56.1 at ¶ 5; Directive 6500, dated Mar. 29, 2006,[3] ("Directive 6500") at § III.A.1, annexed as Exhibit C to DiCarlo Decl.).  Directive 6500 states that penalties imposed on pretrial detainees for a rule violation include punitive segregation not to exceed ninety days (Def. 56.1 at ¶ 6; Penalties, dated Oct. 14, 2005, annexed as Attachment J to Directive 6500).

B.  Plaintiff's Drug Test
    and Disciplinary Hearing

On February 23, 2005, while a pretrial detainee in the Anna M. Kross Center on Riker's Island, a DOC facility, plaintiff provided a urine sample in the Inmate Drug Interdiction Area to Corrections Officer Lewis G. (Def. 56.1 at ¶ 4; Notice of Infraction, dated Feb. 23, 2005, ("Notice of Infraction"), annexed as Exhibit 2 to Verified Complaint, dated April 16, 2005 ("Verified Compl.")).  Plaintiff's sample tested positive for morphine (Def.

---

[3]In their 56.1 Statement, defendants claim that Directive 6500 is dated December 20, 1996 (DiCarlo Decl. at ¶ 4).  For purposes of this motion, I assume that the version of Directive 6500 submitted by defendants with their motion is the version that was in effect at the time of the events in plaintiff's Verified Complaint.

56.1 at ¶ 4; Notice of Infraction). As a result, plaintiff was charged with violating Rule 130.11 (Def. 56.1 at ¶ 4; Notice of Infraction).

On February 25, 2005, Captain Scollo C. conducted a disciplinary hearing on plaintiff's infraction, presiding as the Hearing Officer (Def. 56.1 at ¶ 7; Notice of Disciplinary Hearing Disposition, dated Feb. 25, 2005 ("Notice of Disposition"), annexed as Exhibit 3 to Verified Compl.). Scollo found plaintiff guilty of violating Rule 130.11 and sentenced him to sixty days punitive segregation (Def. 56.1 at ¶ 7; Notice of Disposition). The Notice of Disposition indicates that Scollo based his guilty finding on the Notice of Infraction issued by Lewis to plaintiff; the investigation conducted by Captain William D.; the results of the drug test; and plaintiff's testimony (Notice of Disposition).

On March 18, 2005, plaintiff appealed his disciplinary decision through an Article 78 proceeding in New York State Supreme Court, Bronx County, seeking the dismissal of the disciplinary decision and immediate release from punitive segregation (Def. 56.1 at ¶ 9; Notice of Motion to Challenge Disciplinary Decisions Pursuant to C.P.L.R. 7800, dated Mar. 19, 2005 ("Article 78 Challenge") at 1, annexed as Exhibit 1 to Verified Compl.). On April 27, 2005, the New York Supreme Court dismissed plaintiff's Article 78 petition (Def. 56.1 at ¶ 10; Short Form Order, dated Apr. 27, 2005 ("Art. 78 Order"), annexed as Exhibit

A to Declaration of Janice Silverberg, Esq., dated Jan. 10, 2007). The evidence in the record does not explain why the Article 78 proceeding was dismissed.

## III. <u>Analysis</u>

Defendants assert four grounds in support of their motion: (1) plaintiff failed to properly exhaust his administrative remedies as required by the Prisoner Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a); (2) the doctrine of issue preclusion prevents plaintiff from bringing this federal action because he litigated his claims through an Article 78 proceeding in New York Supreme Court; (3) plaintiff's Fourth Amendment and procedural due process claims fail on the merits; and (4), in any event, defendants are entitled to qualified immunity (Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment, dated Mar. 14, 2007 ("Def. Mem.") at 1-2).

### A. Conversion of Rule 12(c)<br><u>Motion to Rule 56 Motion</u>

In support of their motion, defendants submit materials that are beyond the face of the pleadings. Under Rule 12(d), "the court may consider, 'in its discretion and upon notice to all parties,' materials outside the pleadings . . . ." <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988),

quoting <u>Falls Riverway Realty, Inc. v. City of Niagara Falls</u>, 754
F.2d 49, 53 (2d Cir. 1985). "If it does so, however, the motion
is treated as one for summary judgment under Fed.R.Civ.P. 56."
<u>Sellers v. M.C. Floor Crafters, Inc.</u>, <u>supra</u>, 842 F.2d at 642; <u>see
also</u> <u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability
Litig.</u>, 447 F. Supp.2d 289, 296 (S.D.N.Y. 2006)(converting motion
for judgment on the pleadings to motion for summary judgment); <u>In
re Risk Mgmt. Alternatives, Inc.</u>, 208 F.R.D. 493, 500 (S.D.N.Y.
2002)("Rule 12[(d)] permits the Court to convert a motion for
judgment on the pleadings to a motion for summary judgment if the
Court deems it necessary to refer to matters outside of the
pleadings.").

        Here, defendants proffer the declaration of Carl
DiCarlo, Esq., who attests that DOC personnel searched for any
grievances filed by plaintiff during his incarceration on Rikers
Island and found none.  Attached to DiCarlo's declaration are
copies of (1) Directive 4535; (2) the Drug Rule Supplement; (3)
and Directive 6500.  Defendants also attach a Short Form Order
issued by the Supreme Court of New York, Bronx County, dismissing
the Article 78 proceeding brought by plaintiff.  Resolution of
defendants' motion requires that I consider these materials.

        However, before conversion to a motion for summary
judgment, the non-movant must be "'afford[ed] . . . the
opportunity to present supporting materials.'"  <u>Fiedl v. City of</u>

8

<u>New York</u>, 210 F.3d 79, 83 (2d Cir. 2000), <u>quoting</u> <u>Fonte v. Bd. of</u> <u>Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988); <u>see also</u> Fed.R.Civ.P. 12(d). "The essential inquiry . . . is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" <u>Krijn v. Pogue Simone Real Estate Co.</u>, 896 F.2d 687, 689 (2d Cir. 1990)(citations and internal quotation marks omitted); <u>accord</u> <u>Nat'l Assoc. of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.</u>, 850 F.2d 904, 911 (2d Cir. 1988). "Notice [of conversion] is particularly important where a party is proceeding <u>pro se</u> and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." <u>Beacon Enters., Inc. v. Menzies</u>, 715 F.2d 757, 767 (2d Cir. 1983).

Here, plaintiff is not taken by surprise. Defendants' notice of motion makes explicit that they were moving to dismiss or, in the alternative, for summary judgment, <u>see</u> <u>Nat'l Assoc. of</u> <u>Pharmaceutical Mfrs., Inc. v. Ayerst Labs.</u>, <u>supra</u>, 850 F.2d at 911 (non-movant on notice of conversion where motion was styled as a "motion to dismiss or, in the alternative, for summary judgment"), and their moving papers argued that such conversion would be proper, <u>see</u> <u>Baez v. Kahanowicz</u>, 469 F. Supp.2d 171, 175 (S.D.N.Y. 2007)(non-movant could not "reasonably be taken by

surprise" because "defendant explicitly requested in her moving papers that the Court convert the motion").[4]  Moreover, defendants properly served on plaintiff a copy of the statement that Local Rule 56.2 requires for all pro se litigants facing a motion for summary judgment.  See Beacon Enters., Inc. v. Menzies, supra, 715 F.2d at 767 (pro se plaintiffs are entitled to "unequivocal notice" before conversion of motion to dismiss into motion for summary judgment); Freeman v. Goord, 02 Civ. 9033 (PKC), 2004 WL 2002927 at *4 (S.D.N.Y. Sept. 8, 2004)(same); see also Vital v. Interfaith Med. Ctr., 168 F.3d 615, 621 (2d Cir. 1999)("[A] District Court need not advise a pro se litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice . . . .").

Because the materials outside the pleadings are necessary in resolving this motion and plaintiff had sufficient notice of the possibility of conversion, I treat defendants' motion as one for summary judgment.

---

[4]In a December 10, 2007 Order, I noted that plaintiff had not served or filed any opposition to defendants' motion, which had been due on February 28, 2007 (Docket Item 22).  I directed plaintiff that he had until January 2, 2008 to file such opposition and stated that "defendants have moved to dismiss the complaint or, in the alternative, for summary judgment" (emphasis added).

B.  Summary Judgment
    <u>Pursuant to Rule 56</u>


The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of her case -- one on which she has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact.  An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v.</u> <u>United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993).  If the nonmovant fails to meet this burden, summary judgment will be granted against it.

<u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004); <u>accord</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553-54 (2d Cir. 2005); <u>Gallo v. Prudential Residential Servs., Ltd.</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994).  "The party seeking summary

judgment has the burden to demonstrate that no genuine issue of material fact exists . . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 253-54 (2d Cir. 2002)(citations omitted); <u>accord</u> <u>Jeffreys v. City of New York</u>, <u>supra</u>, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.")(internal quotation marks omitted); <u>see</u> <u>also</u> <u>Make the Road by Walking, Inc. v. Turner</u>, 378 F.3d 133, 142 (2d Cir. 2004); <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Coppola v. Bear Stearns & Co.</u>, 499 F.3d 144, 148 (2d Cir. 2007), <u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return

12

a verdict for the [non-movant] on the evidence presented

. . . .'" <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 788

(2d Cir. 2007), <u>quoting</u> <u>Readco, Inc. v. Marine Midland Bank</u>, 81

F.3d 295, 298 (2d Cir. 1996); <u>accord</u> <u>Higazy v. Templeton</u>, 505

F.3d 161, 168-69 (2d Cir. 2007).

Where a motion for summary judgment is unopposed, as is

defendants' motion here, the motion cannot be granted on default,

nor can it be granted solely on the basis of a non-controverted

56.1 Statement from defendants.  It can only be granted if the

court determines that the movant is entitled to judgment as a

matter of law.  <u>See</u> <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373

F.3d 241, 243-47 (2d Cir. 2004); <u>UMG Recordings, Inc. v. Francis</u>,

06 Civ. 4435 (LTS)(THK), 2007 WL 2438421 at *2 (S.D.N.Y. Aug. 28,

2007).

Lastly, where, as here, a party is proceeding <u>pro</u> <u>se</u>,

his submissions "must be construed liberally and interpreted 'to

raise the strongest arguments they suggest.'" <u>Triestman v. Fed.</u>

<u>Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006), <u>quoting</u>

<u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006); <u>see</u> <u>also</u>

<u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Graham v. Henderson</u>,

89 F.3d 75, 79 (2d Cir. 1996); <u>Burgos v. Hopkins</u>, 14 F.3d 787,

790 (2d Cir. 1994).  This rule applies with particular force when

evaluating motions for summary judgment.  <u>Graham v. Lewinski</u>, 848

F.2d 342, 344 (2d Cir. 1988)("Special solicitude should be

afforded pro se litigants [] when confronted with motions for
summary judgment.").

1.  PLRA Exhaustion

Defendants first argue that plaintiff's claims should
be dismissed because plaintiff failed to exhaust his
administrative remedies as required by the PLRA.

>   42 U.S.C. § 1997e(a) provides that "[n]o action
>   shall be brought with respect to prison conditions
>   under section 1983 of this title, or any other Federal
>   law, by a prisoner confined in any jail, prison, or
>   other correctional facility until such administrative
>   remedies as are available are exhausted."  The
>   exhaustion requirement "applies to all inmate suits
>   about prison life, whether they involve general
>   circumstances or particular episodes, and whether they
>   allege excessive force or some other wrong."  Porter v.
>   Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d
>   12 (2002).  The purpose of the PLRA is "to reduce the
>   quantity and improve the quality of prisoner suits . .
>   . [and to afford] corrections officials time and
>   opportunity to address complaints internally before
>   allowing the initiation of a federal case."  Abney v.
>   McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (quoting
>   Porter, 534 U.S. at 524-25, 122 S.Ct. 983).

Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)(bracketed

material in original); see Marvin v. Goord, 255 F.3d 40, 42 (2d

Cir. 2001)(per curiam); Johnson v. Bendheim, 00 Civ. 720 (JSR),

2001 WL 799569 at *4 (S.D.N.Y. July 13, 2001); Grey v. Sparhawk,

99 Civ. 9871 (HB), 2000 WL 815916 at *1 (S.D.N.Y. June 23, 2000).

>   Courts have interpreted the [PLRA] to require complete
>   exhaustion in accordance with institutional procedures.
>   See, e.g., Sulton v. Greiner, 2000 WL 1809284 (S.D.N.Y.
>   Dec. 11, 2000) (granting summary judgment where
>   prisoner failed to appeal to the CORC); Petit v.

> Bender, 2000 WL 303280, at \*2-3 (S.D.N.Y. March 22,
> 2000) (prisoner who only partially complied with the
> grievance procedures failed to exhaust his
> administrative remedies.); Santiago v. Meinsen, 89 F.
> Supp.2d 435 (S.D.N.Y. 2000) (prisoners must challenge
> the conditions of their confinement through the highest
> level of available administrative avenues prior to
> filing suit). This requirement applies even when
> plaintiffs seek a remedy that cannot be awarded by the
> administrative body hearing the complaint.

Graham v. Cochran, 96 Civ. 6166 (LTS)(RLE), 2002 WL 31132874 at
\*6 (S.D.N.Y. Sept. 25, 2002); see also Vidal v. Gorr, 02 Civ.
5554 (LAK), 2003 WL 43354 at \*1 (S.D.N.Y. Jan. 6, 2003); Beatty
v. Goord, 210 F. Supp.2d 250, 252-53 (S.D.N.Y. 2000).

The PLRA applies to claims asserted by pretrial
detainees as well as sentenced prisoners. See United States v.
Al-Marri, 239 F. Supp.2d 366, 367 n.1 (S.D.N.Y. 2002); Hines v.
Valhalla County Corr. Facility, 01 Civ. 6935 (SAS), 2002 WL
1822740 at \*1-\*2 (S.D.N.Y. Aug. 8, 2002).

The law is relatively clear that the administrative
grievance process must be exhausted before plaintiff's complaint
is filed. Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001)
("[G]rievances must now be fully pursued prior to filing a
complaint in federal court."), overruled in part on other
grounds, Porter v. Nussle, 534 U.S. 516, 532 (2002); Williams v.
United States, 02 Civ. 6523 (HBP), 2004 WL 906221 at \*8 (S.D.N.Y.
Apr. 28, 2004); Funches v. Reish, 97 Civ. 7611 (LBS), 1998 WL
695904 at \*7-\*9 (S.D.N.Y. Oct. 5, 1998). Thus, a prisoner's
attempt to exhaust administrative remedies after the commencement

of an action will not defeat a motion seeking dismissal.  The law
appears to be equally clear that the appropriate disposition of
unexhausted claims is dismissal without prejudice.  <u>Hemphill v.
New York</u>, 380 F.3d 680, 690 (2d Cir. 2004); <u>Giano v. Goord</u>, 380
F.3d 670, 680 (2d Cir. 2004).  Such unexhausted claims may be
reasserted in an amended pleading provided that the
administrative process has been exhausted prior to the filing of
the amended pleading.  <u>Madison v. Mazzuca</u>, 02 Civ. 10299 (RWS),
2004 WL 3037730 at *14 (S.D.N.Y. Dec. 30, 2004); <u>Graham v. Perez</u>,
121 F. Supp.2d 317, 322 (S.D.N.Y. 2000).

Here, defendants argue that plaintiff has produced no
evidence that he filed any grievance challenging the urine test
and the alleged deficiencies in his disciplinary hearing (Def.
Mem. at 8).  In support, defendants proffer the declaration of
Carl DiCarlo, Esq., who attests that he directed DOC personnel to
search for any grievances filed by plaintiff during his
confinement at Rikers Island from September 29, 2004 to June 24,
2005 and that no grievances were found (DiCarlo Decl. at ¶¶ 5-7).
In essence, defendants argue that, by pointing to the absence of
any evidence offered by plaintiff demonstrating that he filed a
grievance, they have met their initial burden of production on
the motion and that plaintiff cannot discharge his limited burden
of production and defeat summary judgment by merely relying on

16

the allegation in his Verified Complaint that he did file a grievance (see Verified Compl. ¶ 15). Defendants are mistaken.

While summary judgment on a PLRA exhaustion claim is proper where plaintiff does not come forward with evidence controverting a defendant's evidentiary proffer that no grievance was filed, see, e.g., Verley v. Wright, 02 Civ. 1182 (PKC), 2007 WL 2822199 at *7 (S.D.N.Y. Sept. 27, 2007), defendants here overlook the fact that plaintiff's Complaint is verified.[5] "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist . . . ." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); see also Fitzgerald v. Henderson, 251 F.3d 345, 361 (2d Cir. 2001)(plaintiff was entitled to rely on verified complaint to oppose summary judgment where plaintiff did not otherwise submit affidavits opposing motion). However, a verified complaint, like an affidavit, cannot create a genuine issue of material fact "by the presentation of assertions that are conclusory." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also Fed.R.Civ.P. 56(e)(2)(requiring non-movant to "set out specific facts showing a genuine issue for trial"). In his Verified Complaint, plaintiff asserts that he filed a grievance in which

---

[5]Plaintiff's Complaint is verified because he declared "under penalty of perjury" that the allegations in the Complaint were "true and correct" (Verified Compl. at 7).

he asserted that the drug test was "illegal" (Verified Compl. ¶¶ 15, 18).  Moreover, his Verified Complaint is not conclusory with regard to his filing of this grievance because plaintiff supports this allegation with the fact that he filed it at a particular facility, i.e., the Anna M. Kross Center, 18-18 Hazen Street, East Elm Hurst, New York, New York (Verified Compl. ¶ 17).  Viewing the evidence in the light most favorable to plaintiff, I conclude that the conflicts in the record concerning whether plaintiff exhausted his administrative remedies raise a genuine issue of material fact that cannot be resolved on a motion for summary judgment.  See Fernandez v. McDonald, 02 Civ. 5663 (LAK), 2003 WL 22096479 at *1 (S.D.N.Y. Sept. 10, 2003)(denying defendant's summary judgment motion on the ground that plaintiff failed to satisfy the PLRA exhaustion requirements where "plaintiff's affidavit . . . raise[d] a genuine issue notwithstanding defendant's circumstantial evidence to the contrary").

### 2.  Issue Preclusion

Defendants next argue that plaintiff's claims are barred from being raised in the instant federal action by the doctrine of issue preclusion because plaintiff litigated his claims in a prior Article 78 proceeding in New York Supreme Court, Bronx County (Def. Mem. at 8).

"Federal courts must give the same preclusive effect to a prior state court judgment as would that state's own courts." Caserta v. Selsky, 01 Civ. 2644 (BSJ), 2002 WL 1359727 at *2 (S.D.N.Y. June 20, 2002); see also 28 U.S.C. § 1738. Under New York law, the doctrine of issue preclusion bars issues decided in an Article 78 proceeding from being relitigated in a Section 1983 action. Yusov v. Martinez, 00 Civ. 5577 (NRB), 2000 WL 1593387 at *3 (S.D.N.Y. Oct. 24, 2000); see also Caserta v. Selsky, supra, 2002 WL 1359727 at *2 ("[Issue preclusion] on the basis of rulings made in Article 78 proceedings does apply to § 1983 actions under New York law.").

New York courts apply the doctrine of issue preclusion if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Colon v. Coughlin, surpa, 58 F.3d at 869; accord Giakoumelos v. Coughlin, 88 F.3d 56, 59 (2d Cir. 1996). As to the first element, New York courts require that the decision be on the merits. Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485, 386 N.E.2d 1328, 1331, 414 N.Y.S.2d 308, 310 (1979); Richard v. Armon, 144 A.D.2d 1, 3, 536 N.Y.S.2d 1014, 1015 (2d Dep't 1989). The Court of Appeals for the Second Circuit has cautioned that issue preclusion only applies if it is "quite clear" that these two elements have been

satisfied.  Colon v. Coughlin, supra, 58 F.3d at 869.  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding."  Colon v. Coughlin, supra, 58 F.3d at 869; see also Caserta v. Selsky, supra, 2002 WL 1359727 at *2; Yusov v. Martinez, supra, 2000 WL 1593387 at *3.

Here, defendants have not met their burden of showing that the plaintiff's instant federal claims were actually and necessarily decided on the merits in his prior Article 78 proceeding.  Plaintiff challenged the disciplinary decision rendered against him for testing positive for morphine through an Article 78 proceeding (Article 78 Challenge at 1).  In two forms plaintiff submitted in support of his Article 78 petition, plaintiff claimed that the random urine test and the alleged due process deficiencies were "violation[s] of [his] civil rights" (Article 78 Challenge at 4).  While it appears from these papers that the claims plaintiff raised before the Article 78 court are identical to the claims plaintiff asserts here, defendants fail to show that the Article 78 court actually and necessarily decided these claims.  In support of their argument, defendants point to a Short Form Order issued by the Article 78 court dismissing plaintiff's claims (Art. 78 Order).  Solely on the

20

basis of this Short Form Order, defendants argue in conclusory fashion that plaintiff's claims were "necessarily decided on the merits" (Def. Mem. at 9).  However, the Short Form Order is one page in length and does not provide any statement of the reasons for the court's decision to dismiss plaintiff's claims.  Rather, the disposition of the Article 78 proceeding is disclosed only by the fact that the word "dismissed" is circled.  Such scant evidence does not support a showing that the Article 78 court actually and necessarily decided the merits of plaintiff's claims.  Cf., e.g., Caserta v. Selsky, supra, 2002 WL 1359727 at *2 (party asserting issue preclusion met its burden of showing that Article 78 court actually and necessarily decided claims only after court reviewed, among other things, the administrative proceeding record and the New York Supreme Court's Decision and Order).  Thus, defendants' issue preclusion argument fails.

### 3.  Plaintiff's Claims
### Under 42 U.S.C. § 1983

To prevail on a claim under Section 1983, a plaintiff must show: "(1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993); accord Snider v. Dylag, 188 F.3d 51, 53 (2d Cir.

1999).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).  With this standard in mind, I turn to the merits of plaintiff's claims.

### a.  Fourth Amendment Claim

Defendants argue that plaintiff fails to show a deprivation of a constitutional or federal right.  Specifically, defendants argue that the random urine test administered on plaintiff did not violate his Fourth Amendment rights (Def. Mem. at 10).  I agree.

The Fourth Amendment to the United States Constitution provides that individuals have the right to be free from "unreasonable searches and seizures" by the government, U.S. Const. amend. IV, and protects expectations of privacy.  Winston v. Lee, 470 U.S. 753, 767 (1985).  While prison inmates have diminished expectations of privacy, e.g., Hudson v. Palmer, 468 U.S. 517, 524 (1984)(holding inmates have no expectation of privacy in their prison cell), "[pretrial detainees] do retain a limited right to bodily privacy[,]" Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992).

A drug test constitutes a search within the meaning of the Fourth Amendment and, therefore, must be conducted in a

reasonable manner.  <u>Vernonia Sch. Dist. v. Acton</u>, 515 U.S. 646,
652 (1995); <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602,
617 (1989); <u>see</u> <u>also</u> <u>Harris v. Keane</u>, 962 F. Supp. 397, 407
(S.D.N.Y. 1997)(analyzing the reasonableness of urine testing in
prison context); <u>Storms v. Coughlin</u>, 600 F. Supp. 1214, 1221-23
(S.D.N.Y. 1984)(same).  To determine whether a search of a
pretrial detainee is reasonable, courts must balance "the
significant and legitimate security interests of the institution
against the privacy interests of the [detainee]," <u>Bell v.
Wolfish</u>, 441 U.S. 520, 560 (1979), and afford prison
administrators "wide-ranging deference in the adoption and
execution of policies and practices that in their judgment are
needed to preserve internal order and discipline and to maintain
institutional security[,]" <u>Bell v. Wolfish</u>, <u>supra</u>, 441 U.S. at
547.

The Court of Appeals for the Second Circuit has
indicated that application of this balancing test involves a two-
step inquiry:  (1) whether the detainee has demonstrated an
expectation of privacy, and (2) "'whether the regulation is
reasonably related to legitimate penological interests.'"  <u>Covino
v. Patrissi</u>, <u>supra</u>, 967 F.2d at 78, <u>quoting</u> <u>Washington v. Harper</u>,
494 U.S. 210, 223 (1990).[6]  The second inquiry tests the validity

_____

[6]The Court of Appeals for the Second Circuit has expressed
doubt on whether "penological interests" are an appropriate guide
(continued...)

23

of a prison regulation where that "prison regulation impinges on

inmates' constitutional rights . . . ." <u>Turner v. Safley</u>, 482

U.S. 78, 89 (1987).  In reviewing such regulations, courts should

consider four factors:

> (i) whether there is a valid, rational connection
> between the prison regulation and the legitimate
> governmental interest put forward to justify it; (ii)
> whether there are alternative means of exercising the
> right in question that remain open to prison inmates;
> (iii) whether accommodation of the asserted
> constitutional right will have an unreasonable impact
> upon guards and other inmates, and upon the allocation
> of prison resources generally; and (iv) whether there
> are reasonable alternatives available to the prison
> authorities.

<u>Covino v. Patrissi</u>, <u>supra</u>, 967 F.2d at 78-79, <u>citing</u> <u>Turner v.</u>

<u>Safley</u>, <u>supra</u>, 482 U.S. at 89.  "The burden is upon the prisoner

to show that a challenged prison regulation is unreasonable."

<u>Covino v. Patrissi</u>, <u>supra</u>, 967 F.2d at 79.

Upon applying the tests in <u>Bell</u> and <u>Turner</u>, I conclude

that the random drug test at issue here is reasonable.  First,

---

[6](...continued)
for analyzing restraints imposed on pretrial detainees given
pretrial detainees' interest in being free from punishment before
conviction and sentencing  <u>See</u> <u>Benjamin v. Fraser</u>, 264 F.3d 175,
187 n.10 (2d Cir. 2001).  Courts in this Circuit, however, have
continued to apply the two part test cited in <u>Covino</u> in such
contexts, <u>e</u>.<u>g</u>., <u>Basciano v. Martinez</u>, 07 CV 421 (NGG)(RML), 2007
WL 2119908 at *9 (E.D.N.Y. May 25, 2007)(Report &
Recommendation), with the caveat that the government interest
must relate to prison management, <u>i</u>.<u>e</u>., be non-punitive, <u>see</u>
<u>Turkman v. Ashcroft</u>, 02 CV 2307 (JG), 2006 WL 1662663 at *47
(E.D.N.Y. June 14, 2006).  Accordingly, I treat "penological" to
mean "relating to prison management" rather than "relating to
punishment."

although plaintiff has demonstrated an expectation of bodily privacy, because Lewis administered the urinalysis on plaintiff while he was a pretrial detainee, this expectation was limited. Bell v. Wolfish, supra, 441 U.S. at 557 ("[G]iven the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope."); Covino v. Patrissi, supra, 967 F.2d at 78. The limited nature of a pretrial detainee's bodily privacy right is illustrated by Bell in which the Supreme Court held that visual body-cavity searches conducted after contact visits with persons from outside the detention center were reasonable under the Fourth Amendment. Bell v. Wolfish, supra, 441 U.S. at 558. In Storms, the Honorable Charles Haight, United States District Judge, read Bell as restricting a sentenced prisoner's Fourth Amendment expectation of bodily privacy to such an extent that any such expectation retained by a sentenced prisoner did not forbid "forced random urine collection and analysis." Storms v. Coughlin, supra, 600 F. Supp. at 1223.

Turning to a review of Directive 4535, the prison regulation that authorizes the random urine testing and which plaintiff challenges, I conclude that it is reasonably related to legitimate penological interests. As to the first Turner factor, the unauthorized use of drugs in detention facilities by detainees poses a serious threat to prison officials' ability to

maintain institutional security.  Block v. Rutherford, 468 U.S.
576, 588-89 (1984); Storms v. Coughlin, supra, 600 F. Supp. at
1220 ("[D]rug use among prisoners is a serious, disruptive
problem within American prisons").  The stated objectives of
Directive 4535 are to "enhance staff and inmate safety,"
"decrease the demand for drugs inside facilities," and "identify
inmate drug abusers so that they can be referred to medical staff
for treatment/counseling" (Directive 4535 at § II.B.).  Thus, the
random drug tests administered pursuant to Directive 4535 are
rationally related to a legitimate governmental interest.

As to the second Turner factor, there do not appear to
be any alternative means that would allow plaintiff to exercise
his limited bodily privacy rights and at the same time allow
prison officials to effectively curtail drug use in the inmate
population.  See Covino v. Patrissi, supra, 967 F.2d at 79
(finding no alternative means allowing inmate plaintiff to
exercise bodily privacy rights in context of random visual body-
cavity searches).

As to the third Turner factor, Directive 4535
reasonably accommodates plaintiff's limited bodily privacy right
in light of the legitimate penological reasons underlying the
urine tests.  The Directive requires that urine be collected by a
staff member of the same gender as the inmate being tested, in
private, and outside the presence of other inmates and non-

participating staff (Directive 4535 at § III.E.2.c.).  See Covnio
v. Patrissi, supra, 967 F.2d at 79 (finding reasonable
accommodation in context of random visual body-cavity searches
where search of inmate plaintiff was conducted in inmate's room
with the door closed and only in the presence of the prison staff
conducting the search).

Lastly, the fourth Turner factor "is not a 'least
restrictive alternative' test, rather it requires the inmate to
'point to an alternative that fully accommodates the prisoner's
rights at de minimis cost to valid penological interests.'"
Covino v. Patrissi, supra, 967 F.2d at 80, quoting, Turner v.
Safley, supra, 482 U.S. at 90-91.  Plaintiff has not suggested
any such alternative.  Indeed, plaintiff has not put forth any
evidence tending to show that the urine tests administered
pursuant to Directive 4535 are unreasonable in any manner.

In sum, plaintiff's urine test was reasonably related
to a legitimate penological interest.  Plaintiff's privacy
expectations do not outweigh defendants' legitimate security
interest in curbing drug use by inmates.  See Thompson v. Souza,
111 F.3d 694, 701 (9th Cir. 1997)(upholding non-random urine
testing of prisoner); Lucero v. Gunter, 17 F.3d 1347, 1349-50
(10th Cir. 1994)(upholding random urine drug testing of
prisoner); Forbes v. Trigg, 976 F.2d 308, 312-13 (7th Cir.
1992)(same); Spence v. Farrier, 807 F.2d 753, 755 (8th Cir.

27

1986)(same).  Thus, the random urine test administered pursuant to Directive 4535 did not violate plaintiff's Fourth Amendment rights.

Accordingly, defendants' motion for summary judgment on plaintiff's Fourth Amendment claim should be granted.

    b.  Procedural
        Due Process Claim

Plaintiff also challenges the procedures utilized in the disciplinary hearing that led to his sixty days segregation (Article 78 Challenge at 5).  Specifically, plaintiff claims that (1) the investigation of his infraction was not commenced within twenty-four hours of the incident; (2) the hearing officer did not summarize the testimony setting forth specific reasons for his finding of guilt; (3) plaintiff was not allowed to review evidence introduced at the hearing; and (4) plaintiff's witnesses were not allowed to testify at the disciplinary hearing (Article 78 Challenge at 5).  Defendants argue that plaintiff fails to establish a protected liberty interest and that, even if plaintiff established a violation of a liberty interest, he fails to show that he was deprived of any process to which he was entitled (Def. Mem. at 12-15).

To establish a due process violation arising from his disciplinary hearing, plaintiff must demonstrate "(1) that he possessed a liberty interest and (2) that the defendant(s)

deprived him of that interest as a result of insufficient process" Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001); accord Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004). "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the states." El-Shabazz v. Wangenstein, 92 Civ. 7291 (LBS), 1995 WL 489686 at *4 (S.D.N.Y. 1995)(internal quotation marks omitted).

In arguing that plaintiff fails to demonstrate the deprivation of a protected liberty interest, defendants mistakenly rely on Sandin v. Conner, 515 U.S. 472 (1995). Sandin held that sentenced inmates retained due process protections only with respect to disciplinary punishments that imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra, 515 U.S. at 484. The Court of Appeals for the Second Circuit has held, however, that Sandin does not apply to pretrial detainees. See Iqbal v. Hasty, 490 F.3d 143, 163 (2d Cir. 2007)("Sandin does not apply to pretrial detainees and [], accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process."); Benjamin v. Fraser, supra, 264 F.3d at 188-89; see also Adams v. Galletta, 96 Civ. 3750 (JGK), 1999 WL 959368 at *5 (S.D.N.Y. Oct. 19,

1999)("Sandin concerned the rights of those who had been convicted and not the rights of pretrial detainees."). Thus, to establish a liberty interest, plaintiff is not required to show that the sixty day punitive segregation he received amounted to an atypical and significant hardship.

Unlike sentenced inmates, pretrial detainees have a liberty interest in being free from punishment prior to conviction under the Due Process Clause. Bell v. Wolfish, supra, 441 U.S. at 535. Thus, a pretrial detainee is entitled to a due process hearing before prison officials may impose restraints on the detainee's liberty for disciplinary reasons. Benjamin v. Fraser, supra, 264 F.3d at 189; accord Stevenson v. Carroll, 495 F.3d 62, 70 (3d Cir. 2007)(pretrial detainees are entitled to process before being "confined for disciplinary infractions"); Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999)("[A]lthough it is permissible to punish a pretrial detainee for misconduct while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of procedural protection."); Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996)("[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule."); see also Brims v. Tracy, 93 Civ. 3233 (DC), 1996 WL 153696 at *3 (S.D.N.Y. Apr. 3, 1996)(as a pretrial detainee, plaintiff could not be placed in

administrative segregation as punishment for disobeying a direct order without a finding of guilt at disciplinary hearing on the charge).

Here, because plaintiff was a pretrial detainee, he retained a liberty interest in not being placed in punitive segregation without a due process hearing on the charge against him. Because defendants rely on Sandin, they mistakenly focus on the duration of plaintiff's confinement. Citing Palmer v. Richards, 364 F.3d 60 (2d Cir. 2004), they argue that plaintiff's sixty days in punitive segregation was not an "atypical and significant hardship." As explained above, Sandin and its progeny are inapplicable here. Accordingly, the next inquiry is what type of process was plaintiff due and whether he was denied the procedural protections to which he was due.

The Court of Appeals for the Second Circuit has held that a pretrial detainee subject to discipline for an infraction is entitled to the due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). Benjamin v. Fraser, supra, 264 F.3d at 190 ("[T]he procedures required by Wolff apply if the restraint on liberty is imposed for disciplinary reasons."); see also Taylor v. Santana, 05 Civ. 1860 (AKH), 2007 WL 737485 at *4 (S.D.N.Y. Mar. 6, 2007)(punitive restraints on a pretrial detainee's liberty trigger the due process protections outlined in Wolff). In Wolff, the Supreme Court held that inmates facing

deprivations of liberty by disciplinary proceedings must be afforded (1) written notice of the charges at least twenty-four hours before any hearing; (2) a written statement of the factual allegations against the inmate; (3) a written statement setting forth the reasons for the disciplinary action taken; (4) and a limited ability to present witnesses and evidence. Wolff v. McDonnell, supra, 418 U.S. at 563-66; see also Benjamin v. Fraser, supra, 264 F.3d at 190.

Here, plaintiff was entitled to the procedural safeguards delineated in Wolff. While it is undisputed that plaintiff was notified by a written statement that he was charged with testing positive for illegal drugs, (see Notice of Infraction), and afforded a disciplinary hearing to contest this charge, (see Notice of Disposition), plaintiff claims in his Verified Complaint that his disciplinary hearing was deficient in certain respects and, thus, violated his due process rights under the Fourteenth Amendment.

The first three alleged deficiencies -- that (1) the investigation of his infraction was not commenced within twenty-four hours of the incident; (2) the hearing officer did not summarize the testimony setting forth specific reasons for his finding of guilt; and (3) plaintiff was not allowed to review evidence introduced at the hearing -- are easily disposed of because none of these elements are required under Wolff. Wolff

v. McDonnell, supra, 418 U.S. at 563-66; Benjamin v. Fraser, supra, 264 F.3d at 190.

However, plaintiff's claim that his witnesses were not allowed to testify during his disciplinary hearing was squarely addressed in Wolff, which held that inmates have a limited right to call witnesses at such hearings, subject to the institutional concerns of prison officials.  Wolff v. McDonnell, supra, 418 U.S. at 566.[7]

Defendants contend that plaintiff received all the process he was due because he had notice of the infraction and an opportunity to contest his charge at the disciplinary hearing, evidenced by the Notice of Infraction and Notice of Disposition, both of which are signed by plaintiff.  Significantly, the Notice of Infraction, which plaintiff signed, indicates that he did not request any witnesses to testify at his disciplinary hearing. The Notice of Disposition, which was given to plaintiff after his

---

[7]The Wolff Court recognized that an absolute right to call witnesses during disciplinary proceedings would be untenable given the risk of reprisal and the institutional interest in limiting these hearing to a reasonable length.  Wolff v. McDonnell, supra, 418 U.S. at 566; see also Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)("The right to call witnesses is circumscribed . . . by the penological need to provide swift discipline in individual cases and by the very real dangers in prison life which may result from violence or intimidation.")(internal quotation marks omitted).  Consistent with this principle, Directive 6500 permits witnesses to testify, "provided they are reasonably available and [that their] attending the infraction hearing will not be unduly hazardous to institutional safety or correctional goals" (Directive 6500 at § III.C.9(d)).

disciplinary hearing and which plaintiff also signed, similarly indicates that no witnesses were called during his hearing. Based on these documents, defendants conclude that plaintiff received all the process he was due. Defendants' argument is unavailing.

Directive 6500 provides detailed procedures governing the calling of witnesses. It states that, even if an inmate does not initially request a witness on the Notice of Infraction, the hearing officer must, nevertheless, ask the inmate whether he wishes to call any witnesses (Directive 6500 § III.C.19). If the inmate waives his right to have witnesses appear, the inmate is required to indicate this on the Notice of Disposition and sign his name (Directive 6500 § III.C.19(a)). Thus, even if plaintiff had initially declined to call witnesses when he signed the Notice of Infraction, the hearing officer was obliged to ask plaintiff whether he wished to call any witnesses and if plaintiff did not so desire, the hearing officer was to obtain confirmation from plaintiff in writing. On the record before me, it is impossible to conclude whether the hearing officer did this. Defendants do not address this issue in their papers and do not provide any evidence, such as a transcript, that demonstrates what transpired during plaintiff's hearing. Viewing the record in the light most favorable to plaintiff and drawing all inferences in his favor, I cannot conclude that defendants

have shown that there is no genuine issue of fact that plaintiff did not seek to call any witness. See Giannullo v. City of New York, supra, 322 F.3d at 140-41 ("[W]here the movant fail[s] to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing.")(internal quotation marks omitted).

Accordingly, defendants' motion for summary judgment on plaintiff's procedural due process claim should be denied.

### 4. Qualified Immunity

Defendants also argue that they are entitled to summary judgment on plaintiff's claims based on the doctrine of qualified immunity (Def. Mem. at 15-18).

A governmental agent who performs a discretionary function may be entitled to qualified immunity from suit for constitutional violations. As the Court of Appeals for the Second Circuit explained in Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004):

> The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citation and quotation marks omitted). The doctrine protects officials who

"act in ways they reasonably believe to be lawful."
Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct.
3034, 97 L.Ed.2d 523 (1987).  Hence, a defendant is not
liable if he did not violate clearly established law or
it was objectively reasonable for him to believe that
he was not violating clearly established law.  Anderson
v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Johnson v.
Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d
Cir. 2001).

    As this Court has held, "[a] right is clearly
established if (1) the law is defined with reasonable
clarity, (2) the Supreme Court or the Second Circuit
has recognized the right, and (3) 'a reasonable
defendant [would] have understood from the existing law
that [his] conduct was unlawful.'"  Anderson v. Recore,
317 F.3d at 197 (quoting Young v. County of Fulton, 160
F.3d 899, 903 (2d Cir. 1998)).  The question is "what a
reasonable person in the defendant's position should
know about the constitutionality of the conduct."
McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d
272, 278 (2d Cir. 1999); see Anderson v. Creighton, 483
U.S. at 640, 107 S.Ct. 3034 ("[T]he right the official
is alleged to have violated must have been 'clearly
established' in a more particularized, and hence more
relevant, sense:  The contours of the right must be
sufficiently clear that a reasonable official would
understand that what he is doing violates that
right.").  Hence, even assuming a state official
violates a plaintiff's constitutional rights, the
official is protected nonetheless if he objectively and
reasonably believed that he was acting lawfully.  See
Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116
L.Ed.2d 589 (1991) ("The qualified immunity standard
'gives ample room for mistaken judgments' by protecting
'all but the plainly incompetent or those who knowingly
violate the law.'") (quoting Malley v. Briggs, 475 U.S.
335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

See Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003); Anderson

v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); see also Anderson v.

Creighton, 483 U.S. 635, 638-39 (1987); Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982); McCullough v. Wyandanch Union Free Sch.

Dist., 187 F.3d 272, 278 (2d Cir. 1999); Connell v. Signoracci,

36

153 F.3d 74, 80 (2d Cir. 1998); <u>Brown v. City of Oneonta</u>, 106

F.3d 1125, 1130-31 (2d Cir. 1997), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>,

<u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273 (2002).

A three-part analysis is used to assess the validity of

an assertion of qualified immunity:

> A government official is entitled to qualified immunity
> from suit for actions taken as a government official if
> (1) the conduct attributed to the official is not
> prohibited by federal law, constitutional or otherwise;
> (2) the plaintiff's right not to be subjected to such
> conduct by the official was not clearly established at
> the time of the conduct; or (3) the official's action
> was objectively legally reasonable in light of the
> legal rules that were clearly established at the time
> it was taken.

<u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 109 (2d Cir. 2000); <u>accord</u> <u>Moore</u>

<u>v. Andreno</u>, 505 F.3d 203, 214 (2d Cir. 2007); <u>Walczyk v. Rio</u>, 496

F.3d 139, 154 (2d Cir. 2007).  "If there is no dispute as to the

material historical facts, the matter of whether the officer's

conduct was objectively reasonable is an issue of law to be

determined by the court."  <u>Zellner v. Summerlin</u>, 494 F.3d 344,

368 (2d Cir. 2007).  If the historical facts are in dispute, they

must be resolved by the fact finder.  <u>Kerman v. City of New York</u>,

374 F.3d 93, 109 (2d Cir. 2004); <u>Oliveira v. Mayer</u>, 23 F.3d 642,

649 (2d Cir. 1994).

A pretrial detainee's limited due process right to call

witnesses of his behalf during his disciplinary hearing was

clearly established in February 2005, the time of plaintiff's

hearing.  <u>See</u> <u>Wolff v. McDonnell</u>, <u>supra</u>, 418 U.S. at 566;

Benjamin v. Fraser, supra, 264 F.3d at 189-90 ("[T]he procedures required by Wolff apply if the restraint on [a pretrial detainee's] liberty interest is imposed for disciplinary reasons.").  The holdings in Wolf and Benjamin establish that the contours of plaintiff's due process rights were well defined by both Supreme Court and Second Circuit precedent at the time defendants conducted plaintiff's disciplinary hearing.

Defendants argue, however, that their actions were objectively reasonable in following Directive 6500's procedures for holding plaintiff's disciplinary hearing (Def. Mem. at 17). Where a right is clearly established, a government official is still entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)(internal quotation marks and citation omitted). In support of their argument that it was objectively reasonable for them to believe that their conduct during plaintiff's disciplinary hearing was lawful at that time, defendants merely cite Directive 6500 in its entirety; they do not offer any evidence that the procedures in Directive 6500 were, in fact, followed, and, as noted above, there is a question of fact as to whether plaintiff sought to call witnesses at the hearing. Because defendants have not provided any evidence from which to evaluate whether they acted in compliance with Directive 6500,

they have not shown that they are entitled to summary judgment on the basis of qualified immunity.  See <u>Dawes v. Carpenter</u>, 899 F. Supp. 892, 896-97 (N.D.N.Y. 1995)(denying assertion of qualified immunity by prison official who conducted plaintiff's disciplinary hearing because defendant "failed to produce any evidence"; this evidence was "necessary in order to permit the Court to evaluate whether [defendant's] beliefs were objectively reasonable in light of the circumstances.").

Accordingly, defendants' summary judgment motion to dismiss plaintiff's procedural due process claim on the ground of qualified immunity should be denied.

## IV.  <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment (Docket Item 20) be granted with respect to plaintiff's Fourth Amendment claim and denied with respect to plaintiff's procedural due process claim.

## V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See <u>also</u> Fed.R.Civ.P. 6(a) and 6(d).

Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         February 1, 2008

                              Respectfully submitted,

                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Curtis Mitchell
DIN No. 05-R-2741
Camp Pharsalia
496 Center Road
South Plymouth, New York 13844-6777

Janice C. Silverberg, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York  10007