UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CURTIS MITCHELL,                          :

                    Plaintiff,            :
                                                    05 Civ. 5792 (JSR)(HBP)
        -against-                         :
                                                    AMENDED REPORT
DEPARTMENT OF CORRECTION,_____            :          AND RECOMMENDATION[1]
CITY OF NEW YORK, et al.,
                                          :
                    Defendants.
                                          :
----------------------------------X

            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.   Introduction


            Pro se plaintiff Curtis Mitchell, an inmate currently

in the custody of the New York State Department of Correctional

Services, brings this action pursuant to 42 U.S.C. § 1983 against

the New York City Department of Correction ("DOC"), Corrections

Officer Lewis G., Captain William D., and Captain Scollo C.[2]

---

[1]This Report and Recommendation amends the Report and
Recommendation issued on February 1, 2008 by specifying that I
construe plaintiff's procedural due process claim to be asserted
against defendant Captain Scollo C. only.  With the exception of
some immaterial stylistic edits, it is identical to the
previously issued Report and Recommendation in all other
respects.

[2]The record does not provide the full name of any of the
                                                    (continued...)

Plaintiff asserts defendants violated both his Fourth Amendment rights by subjecting him to a random drug test and his procedural due process rights under the Fourteenth Amendment through certain deficiencies in his disciplinary hearing, which resulted in a penalty of sixty days punitive segregation at the Otis Bantum Correctional Center at Rikers Island.  By notice of motion dated March 14, 2007, all defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment pursuant to Rule 56.  For the reasons set forth below, I respectfully recommend that defendants' motion be granted in part and denied in part.

---

[2](...continued)
individual defendants.

II.  <u>Facts</u>[3]

---

[3]The undisputed facts are set forth herein.  These facts are
drawn primarily from defendants' Local Rule 56.1 Statement of
Material Facts ("56.1 Statement"), the exhibits attached to their
Notice of Motion, and plaintiff's Verified Complaint (Docket
Items 2, 20).  Plaintiff has not filed a counter-statement as
required by Local Rule 56.1.  Consequently, I may deem the facts
set forth in defendants' 56.1 Statement as admitted.  <u>Holtz v.
Rockefeller & Co., Inc.</u>, 258 F.3d 62, 72 (2d Cir. 2001).

However, "[a] district court has broad discretion to
determine whether to overlook a party's failure to comply with
local court rules," and, thus, "it may in its discretion opt to
conduct an assiduous review of the record even where one of the
parties has failed to file [a counter-statement under Local Rule
56.1]."  <u>Holtz v. Rockefeller & Co., Inc.</u>, <u>supra</u>, 258 F.3d at 73.
Because of the limited record in this case and because the
material facts are readily apparent from plaintiff's Verified
Complaint, I exercise this discretion "to overlook" plaintiff's
failure to comply with the local rules to the extent that
plaintiff's Verified Complaint and the attached exhibits address
the issues raised in defendants' 56.1 Statement.  <u>See</u> <u>Am. Med.
Ass'n v. United Healthcare Corp.</u>, 00 Civ. 2800 (LMM), 2007 WL
1771498 at *3 (S.D.N.Y. June 18, 2007)(conducting review of the
record "to fill [] gaps" resulting from plaintiff's failure to
file a 56.1 counter-statement in response to defendants' 56.1
statement).  To the extent that defendants' 56.1 Statement is not
controverted by evidence, I deem it admitted.  <u>See</u> <u>Johnson v. New
York</u>, 04-CV-1070 (DLI)(LB), 2007 WL 764514 at *6 (E.D.N.Y. Mar.
9, 2007)(considering uncontroverted portions of defendant's 56.1
Statement as admitted where <u>pro</u> <u>se</u> plaintiff did not file 56.1
counter-statement).

Finally, I note that plaintiff's failure to file such a
counter-statement does not relieve defendants from "adduc[ing]
admissible evidence in the record to support the factual
assertions contained in [their] Rule 56.1 Statement, as
[plaintiff] 'is not required to rebut an insufficient showing.'"
<u>NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. &
Urban Dev.</u>, 07 Civ. 3378 (GEL), 2007 WL 4233008 at *1 n.1
(S.D.N.Y. Nov. 30, 2007), <u>quoting</u> <u>Giannullo v. City of New York</u>,
322 F.3d 139, 141 (2d Cir. 2003).

A.  Relevant DOC
    Regulations

    In December 2004, DOC promulgated the Inmate Drug
Testing Directive ("Directive 4535") to establish policies and
procedures for conducting drug testing of inmates (Defendants'
Rule 56.1 Statement, dated Jan. 10, 2007 ("Def. 56.1") at ¶ 2;
Directive 4535, dated Dec. 27, 2004 ("Directive 4535") at 1,
annexed as Exhibit A to Declaration of Carl DiCarlo, Esq., dated
Jan. 9, 2007 ("DiCarlo Decl.")).  Pursuant to Directive 4535,
inmates may be ordered to provide urine specimens for random drug
testing (Def. 56.1 at ¶ 2; Directive 4535 at § III.C.3).  Direc-
tive 4535 further provides that inmates who test positive for
illegal drugs will be issued an infraction and are subject to
disciplinary penalties of up to ninety days punitive segregation
(Directive 4535 at § III.F.1.c).

    On December 27, 2004, DOC distributed an Inmate Rule
Supplement entitled "Drug Testing" (the "Drug Rule Supplement"),
which sets forth Rules 130.10 and 130.11 (Def. 56.1 at ¶ 3; Drug
Rule Supplement, dated Dec. 27, 2004 (the "Drug Rule Supple-
ment"), annexed as Exhibit B to DiCarlo Decl.).  Rule 130.10
mandates that inmates provide urine specimens when they are
notified that they have been selected for drug testing, and Rule
130.11 prohibits testing positive for illegal drugs/substances
(Drug Rule Supplement).  The Drug Rule supplement also distin-

4

guishes between random drug testing, which is defined as testing based on a list of names randomly generated on a daily basis, from testing based on reasonable suspicion (Drug Rule Supplement).

Infractions issued for violating Rule 130.11 are processed pursuant to DOC's Inmate Disciplinary Due Process Directive ("Directive 6500") (Def. 56.1 at ¶ 5; Directive 6500, dated Mar. 29, 2006,[4] ("Directive 6500") at § III.A.1, annexed as Exhibit C to DiCarlo Decl.). Directive 6500 states that penalties imposed on pretrial detainees for a rule violation include punitive segregation not to exceed ninety days (Def. 56.1 at ¶ 6; Penalties, dated Oct. 14, 2005, annexed as Attachment J to Directive 6500).

B. Plaintiff's Drug Test
   and Disciplinary Hearing

On February 23, 2005, while a pretrial detainee in the Anna M. Kross Center on Riker's Island, a DOC facility, plaintiff provided a urine sample in the Inmate Drug Interdiction Area to Corrections Officer Lewis G. (Def. 56.1 at ¶ 4; Notice of Infraction, dated Feb. 23, 2005, ("Notice of Infraction"), annexed as

_____

[4]In their 56.1 Statement, defendants claim that Directive 6500 is dated December 20, 1996 (DiCarlo Decl. at ¶ 4). For purposes of this motion, I assume that the version of Directive 6500 submitted by defendants with their motion is the version that was in effect at the time of the events in plaintiff's Verified Complaint.

Exhibit 2 to Verified Complaint, dated April 16, 2005 ("Verified Compl.")).  Plaintiff's sample tested positive for morphine (Def. 56.1 at ¶ 4; Notice of Infraction).  As a result, plaintiff was charged with violating Rule 130.11 (Def. 56.1 at ¶ 4; Notice of Infraction).

On February 25, 2005, Captain Scollo C. conducted a disciplinary hearing on plaintiff's infraction, presiding as the Hearing Officer (Def. 56.1 at ¶ 7; Notice of Disciplinary Hearing Disposition, dated Feb. 25, 2005 ("Notice of Disposition"), annexed as Exhibit 3 to Verified Compl.).  Scollo found plaintiff guilty of violating Rule 130.11 and sentenced him to sixty days punitive segregation (Def. 56.1 at ¶ 7; Notice of Disposition). The Notice of Disposition indicates that Scollo based his guilty finding on the Notice of Infraction issued by Lewis to plaintiff; the investigation conducted by Captain William D.; the results of the drug test; and plaintiff's testimony (Notice of Disposition).

On March 18, 2005, plaintiff appealed his disciplinary decision through an Article 78 proceeding in New York State Supreme Court, Bronx County, seeking the dismissal of the disciplinary decision and immediate release from punitive segregation (Def. 56.1 at ¶ 9; Notice of Motion to Challenge Disciplinary Decisions Pursuant to C.P.L.R. 7800, dated Mar. 19, 2005 ("Article 78 Challenge") at 1, annexed as Exhibit 1 to Verified Compl.).  On April 27, 2005, the New York Supreme Court dismissed

plaintiff's Article 78 petition (Def. 56.1 at ¶ 10; Short Form
Order, dated Apr. 27, 2005 ("Art. 78 Order"), annexed as Exhibit
A to Declaration of Janice Silverberg, Esq., dated Jan. 10,
2007).  The evidence in the record does not explain why the
Article 78 proceeding was dismissed.

III.  <u>Analysis</u>

        Defendants assert four grounds in support of their
motion:  (1) plaintiff failed to properly exhaust his
administrative remedies as required by the Prisoner Litigation
Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a); (2) the
doctrine of issue preclusion prevents plaintiff from bringing
this federal action because he litigated his claims through an
Article 78 proceeding in New York Supreme Court; (3) plaintiff's
Fourth Amendment and procedural due process claims fail on the
merits; and (4), in any event, defendants are entitled to
qualified immunity (Defendants' Memorandum of Law in Support of
Defendants' Motion to Dismiss the Complaint or in the Alternative
for Summary Judgment, dated Mar. 14, 2007 ("Def. Mem.") at 1-2).

    A.  Conversion of Rule 12(c)
        <u>Motion to Rule 56 Motion</u>

        In support of their motion, defendants submit materials
that are beyond the face of the pleadings.  Under Rule 12(d),
"the court may consider, 'in its discretion and upon notice to

all parties,' materials outside the pleadings . . . ." <u>Sellers</u>
<u>v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988),
<u>quoting</u> <u>Falls Riverway Realty, Inc. v. City of Niagara Falls</u>, 754
F.2d 49, 53 (2d Cir. 1985).  "If it does so, however, the motion
is treated as one for summary judgment under Fed.R.Civ.P. 56."
<u>Sellers v. M.C. Floor Crafters, Inc.</u>, <u>supra</u>, 842 F.2d at 642; <u>see</u>
<u>also</u> <u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability</u>
<u>Litig.</u>, 447 F. Supp.2d 289, 296 (S.D.N.Y. 2006)(converting motion
for judgment on the pleadings to motion for summary judgment); <u>In</u>
<u>re Risk Mgmt. Alternatives, Inc.</u>, 208 F.R.D. 493, 500 (S.D.N.Y.
2002)("Rule 12[(d)] permits the Court to convert a motion for
judgment on the pleadings to a motion for summary judgment if the
Court deems it necessary to refer to matters outside of the
pleadings.").

        Here, defendants proffer the declaration of Carl
DiCarlo, Esq., who attests that DOC personnel searched for any
grievances filed by plaintiff during his incarceration on Rikers
Island and found none.  Attached to DiCarlo's declaration are
copies of (1) Directive 4535; (2) the Drug Rule Supplement; (3)
and Directive 6500.  Defendants also attach a Short Form Order
issued by the Supreme Court of New York, Bronx County, dismissing
the Article 78 proceeding brought by plaintiff.  Resolution of
defendants' motion requires that I consider these materials.

However, before conversion to a motion for summary judgment, the non-movant must be "'afford[ed] . . . the opportunity to present supporting materials.'"  Fiedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000), quoting Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988); see also Fed.R.Civ.P. 12(d).  "The essential inquiry . . . is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'"  Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990)(citations and internal quotation marks omitted); accord Nat'l Assoc. of Pharmaceutical Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 911 (2d Cir. 1988).  "Notice [of conversion] is particularly important where a party is proceeding pro se and may be unaware of the consequences of his failure to offer evidence bearing on triable issues."  Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983).

Here, plaintiff is not taken by surprise.  Defendants' notice of motion makes explicit that they were moving to dismiss or, in the alternative, for summary judgment, see Nat'l Assoc. of Pharmaceutical Mfrs., Inc. v. Ayerst Labs., supra, 850 F.2d at 911 (non-movant on notice of conversion where motion was styled as a "motion to dismiss or, in the alternative, for summary

judgment"), and their moving papers argued that such conversion would be proper, see Baez v. Kahanowicz, 469 F. Supp.2d 171, 175 (S.D.N.Y. 2007)(non-movant could not "reasonably be taken by surprise" because "defendant explicitly requested in her moving papers that the Court convert the motion").[5]  Moreover, defendants properly served on plaintiff a copy of the statement that Local Rule 56.2 requires for all pro se litigants facing a motion for summary judgment.  See Beacon Enters., Inc. v. Menzies, supra, 715 F.2d at 767 (pro se plaintiffs are entitled to "unequivocal notice" before conversion of motion to dismiss into motion for summary judgment); Freeman v. Goord, 02 Civ. 9033 (PKC), 2004 WL 2002927 at *4 (S.D.N.Y. Sept. 8, 2004)(same); see also Vital v. Interfaith Med. Ctr., 168 F.3d 615, 621 (2d Cir. 1999)("[A] District Court need not advise a pro se litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice . . . .").

Because the materials outside the pleadings are necessary in resolving this motion and plaintiff had sufficient

---

[5]In a December 10, 2007 Order, I noted that plaintiff had not served or filed any opposition to defendants' motion, which had been due on February 28, 2007 (Docket Item 22).  I directed plaintiff that he had until January 2, 2008 to file such opposition and stated that "defendants have moved to dismiss the complaint or, in the alternative, for summary judgment" (emphasis added).

notice of the possibility of conversion, I treat defendants'
motion as one for summary judgment.

B.   Summary Judgment
     <u>Pursuant to Rule 56</u>

The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no
> genuine issue of material fact and the moving party is
> entitled to judgment as a matter of law.  Fed.R.Civ.P.
> 56(c).  This form of relief is appropriate when, after
> discovery, the party -- here plaintiff -- against whom
> summary judgment is sought, has not shown that evidence
> of an essential element of her case -- one on which she
> has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp.</u>
> <u>v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
> L.Ed.2d 265 (1986).  This form of remedy is
> inappropriate when the issue to be resolved is both
> genuine and related to a disputed material fact.  An
> alleged factual dispute regarding immaterial or minor
> facts between the parties will not defeat an otherwise
> properly supported motion for summary judgment.  <u>See</u>
> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir.
> 1990).  Moreover, the existence of a mere scintilla of
> evidence in support of nonmovant's position is
> insufficient to defeat the motion; there must be
> evidence on which a jury could reasonably find for the
> nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
> 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> If the movant demonstrates an absence of a genuine
> issue of material fact, a limited burden of production
> shifts to the nonmovant, who must "demonstrate more
> than some metaphysical doubt as to the material facts,"
> and come forward with "specific facts showing that
> there is a genuine issue for trial."  <u>Aslanidis v.</u>
> <u>United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir.
> 1993).  If the nonmovant fails to meet this burden,
> summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists . . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002)(citations omitted); accord Jeffreys v. City of New York, supra, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.")(internal quotation marks omitted); see also Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy

v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented . . . .'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996); accord Higazy v. Templeton, 505 F.3d 161, 168-69 (2d Cir. 2007).

Where a motion for summary judgment is unopposed, as is defendants' motion here, the motion cannot be granted on default, nor can it be granted solely on the basis of a non-controverted 56.1 Statement from defendants. It can only be granted if the court determines that the movant is entitled to judgment as a matter of law. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 243-47 (2d Cir. 2004); UMG Recordings, Inc. v. Francis, 06 Civ. 4435 (LTS)(THK), 2007 WL 2438421 at *2 (S.D.N.Y. Aug. 28, 2007).

Lastly, where, as here, a party is proceeding pro se, his submissions "must be construed liberally and interpreted 'to raise the strongest arguments they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); see also Haines v. Kerner, 404 U.S. 519, 520 (1972); Graham v. Henderson,

89 F.3d 75, 79 (2d Cir. 1996); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). This rule applies with particular force when evaluating motions for summary judgment. <u>Graham v. Lewinski</u>, 848 F.2d 342, 344 (2d Cir. 1988)("Special solicitude should be afforded <u>pro se</u> litigants [] when confronted with motions for summary judgment.").

### 1. <u>PLRA Exhaustion</u>

Defendants first argue that plaintiff's claims should be dismissed because plaintiff failed to exhaust his administrative remedies as required by the PLRA.

> 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The purpose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Abney v. McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004) (<u>quoting Porter</u>, 534 U.S. at 524-25, 122 S.Ct. 983).

<u>Brownell v. Krom</u>, 446 F.3d 305, 310 (2d Cir. 2006)(bracketed material in original); <u>see Marvin v. Goord</u>, 255 F.3d 40, 42 (2d Cir. 2001)(<u>per curiam</u>); <u>Johnson v. Bendheim</u>, 00 Civ. 720 (JSR),

2001 WL 799569 at *4 (S.D.N.Y. July 13, 2001); Grey v. Sparhawk, 99 Civ. 9871 (HB), 2000 WL 815916 at *1 (S.D.N.Y. June 23, 2000).

> Courts have interpreted the [PLRA] to require complete exhaustion in accordance with institutional procedures. See, e.g., Sulton v. Greiner, 2000 WL 1809284 (S.D.N.Y. Dec. 11, 2000) (granting summary judgment where prisoner failed to appeal to the CORC); Petit v. Bender, 2000 WL 303280, at *2-3 (S.D.N.Y. March 22, 2000) (prisoner who only partially complied with the grievance procedures failed to exhaust his administrative remedies.); Santiago v. Meinsen, 89 F. Supp.2d 435 (S.D.N.Y. 2000) (prisoners must challenge the conditions of their confinement through the highest level of available administrative avenues prior to filing suit). This requirement applies even when plaintiffs seek a remedy that cannot be awarded by the administrative body hearing the complaint.

Graham v. Cochran, 96 Civ. 6166 (LTS)(RLE), 2002 WL 31132874 at *6 (S.D.N.Y. Sept. 25, 2002); see also Vidal v. Gorr, 02 Civ. 5554 (LAK), 2003 WL 43354 at *1 (S.D.N.Y. Jan. 6, 2003); Beatty v. Goord, 210 F. Supp.2d 250, 252-53 (S.D.N.Y. 2000).

The PLRA applies to claims asserted by pretrial detainees as well as sentenced prisoners. See United States v. Al-Marri, 239 F. Supp.2d 366, 367 n.1 (S.D.N.Y. 2002); Hines v. Valhalla County Corr. Facility, 01 Civ. 6935 (SAS), 2002 WL 1822740 at *1-*2 (S.D.N.Y. Aug. 8, 2002).

The law is relatively clear that the administrative grievance process must be exhausted before plaintiff's complaint is filed. Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."), overruled in part on other

grounds, <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Williams v.</u>
<u>United States</u>, 02 Civ. 6523 (HBP), 2004 WL 906221 at *8 (S.D.N.Y.
Apr. 28, 2004); <u>Funches v. Reish</u>, 97 Civ. 7611 (LBS), 1998 WL
695904 at *7-*9 (S.D.N.Y. Oct. 5, 1998). Thus, a prisoner's
attempt to exhaust administrative remedies after the commencement
of an action will not defeat a motion seeking dismissal. The law
appears to be equally clear that the appropriate disposition of
unexhausted claims is dismissal without prejudice. <u>Hemphill v.</u>
<u>New York</u>, 380 F.3d 680, 690 (2d Cir. 2004); <u>Giano v. Goord</u>, 380
F.3d 670, 680 (2d Cir. 2004). Such unexhausted claims may be
reasserted in an amended pleading provided that the
administrative process has been exhausted prior to the filing of
the amended pleading. <u>Madison v. Mazzuca</u>, 02 Civ. 10299 (RWS),
2004 WL 3037730 at *14 (S.D.N.Y. Dec. 30, 2004); <u>Graham v. Perez</u>,
121 F. Supp.2d 317, 322 (S.D.N.Y. 2000).

        Here, defendants argue that plaintiff has produced no
evidence that he filed any grievance challenging the urine test
and the alleged deficiencies in his disciplinary hearing (Def.
Mem. at 8). In support, defendants proffer the declaration of
Carl DiCarlo, Esq., who attests that he directed DOC personnel to
search for any grievances filed by plaintiff during his
confinement at Rikers Island from September 29, 2004 to June 24,
2005 and that no grievances were found (DiCarlo Decl. at ¶¶ 5-7).
In essence, defendants argue that, by pointing to the absence of

any evidence offered by plaintiff demonstrating that he filed a grievance, they have met their initial burden of production on the motion and that plaintiff cannot discharge his limited burden of production and defeat summary judgment by merely relying on the allegation in his Verified Complaint that he did file a grievance (see Verified Compl. ¶ 15). Defendants are mistaken.

While summary judgment on a PLRA exhaustion claim is proper where plaintiff does not come forward with evidence controverting a defendant's evidentiary proffer that no grievance was filed, see, e.g., Verley v. Wright, 02 Civ. 1182 (PKC), 2007 WL 2822199 at *7 (S.D.N.Y. Sept. 27, 2007), defendants here overlook the fact that plaintiff's Complaint is verified.[6] "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist . . . ." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); see also Fitzgerald v. Henderson, 251 F.3d 345, 361 (2d Cir. 2001)(plaintiff was entitled to rely on verified complaint to oppose summary judgment where plaintiff did not otherwise submit affidavits opposing motion). However, a verified complaint, like an affidavit, cannot create a genuine issue of material fact "by the presentation of assertions that are conclusory." Patterson v.

_____

[6]Plaintiff's Complaint is verified because he declared "under penalty of perjury" that the allegations in the Complaint were "true and correct" (Verified Compl. at 7).

17

County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also
Fed.R.Civ.P. 56(e)(2)(requiring non-movant to "set out specific
facts showing a genuine issue for trial").  In his Verified
Complaint, plaintiff asserts that he filed a grievance in which
he asserted that the drug test was "illegal" (Verified Compl.
¶¶ 15, 18).  Moreover, his Verified Complaint is not conclusory
with regard to his filing of this grievance because plaintiff
supports this allegation with the fact that he filed it at a
particular facility, i.e., the Anna M. Kross Center, 18-18 Hazen
Street, East Elm Hurst, New York, New York (Verified Compl.
¶ 17).  Viewing the evidence in the light most favorable to
plaintiff, I conclude that the conflicts in the record concerning
whether plaintiff exhausted his administrative remedies raise a
genuine issue of material fact that cannot be resolved on a
motion for summary judgment.  See Fernandez v. McDonald, 02 Civ.
5663 (LAK), 2003 WL 22096479 at *1 (S.D.N.Y. Sept. 10,
2003)(denying defendant's summary judgment motion on the ground
that plaintiff failed to satisfy the PLRA exhaustion requirements
where "plaintiff's affidavit . . . raise[d] a genuine issue
notwithstanding defendant's circumstantial evidence to the
contrary").

        2.  Issue Preclusion

Defendants next argue that plaintiff's claims are barred from being raised in the instant federal action by the doctrine of issue preclusion because plaintiff litigated his claims in a prior Article 78 proceeding in New York Supreme Court, Bronx County (Def. Mem. at 8).

"Federal courts must give the same preclusive effect to a prior state court judgment as would that state's own courts." Caserta v. Selsky, 01 Civ. 2644 (BSJ), 2002 WL 1359727 at *2 (S.D.N.Y. June 20, 2002); see also 28 U.S.C. § 1738. Under New York law, the doctrine of issue preclusion bars issues decided in an Article 78 proceeding from being relitigated in a Section 1983 action. Yusov v. Martinez, 00 Civ. 5577 (NRB), 2000 WL 1593387 at *3 (S.D.N.Y. Oct. 24, 2000); see also Caserta v. Selsky, supra, 2002 WL 1359727 at *2 ("[Issue preclusion] on the basis of rulings made in Article 78 proceedings does apply to § 1983 actions under New York law.").

New York courts apply the doctrine of issue preclusion if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Colon v. Coughlin, surpa, 58 F.3d at 869; accord Giakoumelos v. Coughlin, 88 F.3d 56, 59 (2d Cir. 1996). As to the first element, New York courts require that the decision be on the merits. Gramatan Home Investors

Corp. v. Lopez, 46 N.Y.2d 481, 485, 386 N.E.2d 1328, 1331, 414
N.Y.S.2d 308, 310 (1979); Richard v. Armon, 144 A.D.2d 1, 3, 536
N.Y.S.2d 1014, 1015 (2d Dep't 1989).  The Court of Appeals for
the Second Circuit has cautioned that issue preclusion only
applies if it is "quite clear" that these two elements have been
satisfied.  Colon v. Coughlin, supra, 58 F.3d at 869.  "The party
asserting issue preclusion bears the burden of showing that the
identical issue was previously decided, while the party against
whom the doctrine is asserted bears the burden of showing the
absence of a full and fair opportunity to litigate in the prior
proceeding."  Colon v. Coughlin, supra, 58 F.3d at 869; see also
Caserta v. Selsky, supra, 2002 WL 1359727 at *2; Yusov v.
Martinez, supra, 2000 WL 1593387 at *3.

        Here, defendants have not met their burden of showing
that the plaintiff's instant federal claims were actually and
necessarily decided on the merits in his prior Article 78
proceeding.  Plaintiff challenged the disciplinary decision
rendered against him for testing positive for morphine through an
Article 78 proceeding (Article 78 Challenge at 1).  In two forms
plaintiff submitted in support of his Article 78 petition,
plaintiff claimed that the random urine test and the alleged due
process deficiencies were "violation[s] of [his] civil rights"
(Article 78 Challenge at 4).  While it appears from these papers
that the claims plaintiff raised before the Article 78 court are

20

identical to the claims plaintiff asserts here, defendants fail to show that the Article 78 court actually and necessarily decided these claims. In support of their argument, defendants point to a Short Form Order issued by the Article 78 court dismissing plaintiff's claims (Art. 78 Order). Solely on the basis of this Short Form Order, defendants argue in conclusory fashion that plaintiff's claims were "necessarily decided on the merits" (Def. Mem. at 9). However, the Short Form Order is one page in length and does not provide any statement of the reasons for the court's decision to dismiss plaintiff's claims. Rather, the disposition of the Article 78 proceeding is disclosed only by the fact that the word "dismissed" is circled. Such scant evidence does not support a showing that the Article 78 court actually and necessarily decided the merits of plaintiff's claims. Cf., e.g., Caserta v. Selsky, supra, 2002 WL 1359727 at *2 (party asserting issue preclusion met its burden of showing that Article 78 court actually and necessarily decided claims only after court reviewed, among other things, the administrative proceeding record and the New York Supreme Court's Decision and Order). Thus, defendants' issue preclusion argument fails.

### 3. Plaintiff's Claims
### Under 42 U.S.C. § 1983

To prevail on a claim under Section 1983, a plaintiff must show: "(1) that the challenged conduct was attributable at

21

least in part to a person acting under color of state law, and
(2) that such conduct deprived the plaintiff of a right,
privilege, or immunity secured by the Constitution or laws of the
United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d
Cir. 1993); accord Snider v. Dylag, 188 F.3d 51, 53 (2d Cir.
1999). "Section 1983 itself creates no substantive rights; it
provides only a procedure for redress for the deprivation of
rights established elsewhere." Sykes v. James, 13 F.3d 515, 519
(2d Cir. 1993). With this standard in mind, I turn to the merits
of plaintiff's claims.

### a. Fourth Amendment Claim

Defendants argue that plaintiff fails to show a
deprivation of a constitutional or federal right. Specifically,
defendants argue that the random urine test administered on
plaintiff did not violate his Fourth Amendment rights (Def. Mem.
at 10). I agree.

The Fourth Amendment to the United States Constitution
provides that individuals have the right to be free from
"unreasonable searches and seizures" by the government, U.S.
Const. amend. IV, and protects expectations of privacy. Winston
v. Lee, 470 U.S. 753, 767 (1985). While prison inmates have
diminished expectations of privacy, e.g., Hudson v. Palmer, 468
U.S. 517, 524 (1984)(holding inmates have no expectation of

privacy in their prison cell), "[pretrial detainees] do retain a limited right to bodily privacy[,]" Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992).

A drug test constitutes a search within the meaning of the Fourth Amendment and, therefore, must be conducted in a reasonable manner.  Vernonia Sch. Dist. v. Acton, 515 U.S. 646, 652 (1995); Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 617 (1989); see also Harris v. Keane, 962 F. Supp. 397, 407 (S.D.N.Y. 1997)(analyzing the reasonableness of urine testing in prison context); Storms v. Coughlin, 600 F. Supp. 1214, 1221-23 (S.D.N.Y. 1984)(same).  To determine whether a search of a pretrial detainee is reasonable, courts must balance "the significant and legitimate security interests of the institution against the privacy interests of the [detainee]," Bell v. Wolfish, 441 U.S. 520, 560 (1979), and afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security[,]" Bell v. Wolfish, supra, 441 U.S. at 547.

The Court of Appeals for the Second Circuit has indicated that application of this balancing test involves a two-step inquiry:  (1) whether the detainee has demonstrated an expectation of privacy, and (2) "'whether the regulation is

reasonably related to legitimate penological interests.'" <u>Covino</u>
<u>v. Patrissi</u>, <u>supra</u>, 967 F.2d at 78, <u>quoting</u> <u>Washington v. Harper</u>,
494 U.S. 210, 223 (1990).[7]  The second inquiry tests the validity
of a prison regulation where that "prison regulation impinges on
inmates' constitutional rights . . . ."  <u>Turner v. Safley</u>, 482
U.S. 78, 89 (1987).  In reviewing such regulations, courts should
consider four factors:

> (i) whether there is a valid, rational connection
> between the prison regulation and the legitimate
> governmental interest put forward to justify it; (ii)
> whether there are alternative means of exercising the
> right in question that remain open to prison inmates;
> (iii) whether accommodation of the asserted
> constitutional right will have an unreasonable impact
> upon guards and other inmates, and upon the allocation
> of prison resources generally; and (iv) whether there
> are reasonable alternatives available to the prison
> authorities.

<u>Covino v. Patrissi</u>, <u>supra</u>, 967 F.2d at 78-79, <u>citing</u> <u>Turner v.</u>
<u>Safley</u>, <u>supra</u>, 482 U.S. at 89.  "The burden is upon the prisoner

---

[7]The Court of Appeals for the Second Circuit has expressed
doubt on whether "penological interests" are an appropriate guide
for analyzing restraints imposed on pretrial detainees given
pretrial detainees' interest in being free from punishment before
conviction and sentencing  <u>See</u> <u>Benjamin v. Fraser</u>, 264 F.3d 175,
187 n.10 (2d Cir. 2001).  Courts in this Circuit, however, have
continued to apply the two part test cited in <u>Covino</u> in such
contexts, <u>e.g.</u>, <u>Basciano v. Martinez</u>, 07 CV 421 (NGG)(RML), 2007
WL 2119908 at *9 (E.D.N.Y. May 25, 2007)(Report &
Recommendation), with the caveat that the government interest
must relate to prison management, <u>i.e.</u>, be non-punitive, <u>see</u>
<u>Turkman v. Ashcroft</u>, 02 CV 2307 (JG), 2006 WL 1662663 at *47
(E.D.N.Y. June 14, 2006).  Accordingly, I treat "penological" to
mean "relating to prison management" rather than "relating to
punishment."

to show that a challenged prison regulation is unreasonable."
Covino v. Patrissi, supra, 967 F.2d at 79.

Upon applying the tests in Bell and Turner, I conclude
that the random drug test at issue here is reasonable. First,
although plaintiff has demonstrated an expectation of bodily
privacy, because Lewis administered the urinalysis on plaintiff
while he was a pretrial detainee, this expectation was limited.
Bell v. Wolfish, supra, 441 U.S. at 557 ("[G]iven the realities
of institutional confinement, any reasonable expectation of
privacy that a detainee retained necessarily would be of a
diminished scope."); Covino v. Patrissi, supra, 967 F.2d at 78.
The limited nature of a pretrial detainee's bodily privacy right
is illustrated by Bell in which the Supreme Court held that
visual body-cavity searches conducted after contact visits with
persons from outside the detention center were reasonable under
the Fourth Amendment.  Bell v. Wolfish, supra, 441 U.S. at 558.
In Storms, the Honorable Charles Haight, United States District
Judge, read Bell as restricting a sentenced prisoner's Fourth
Amendment expectation of bodily privacy to such an extent that
any such expectation retained by a sentenced prisoner did not
forbid "forced random urine collection and analysis."  Storms v.
Coughlin, supra, 600 F. Supp. at 1223.

Turning to a review of Directive 4535, the prison
regulation that authorizes the random urine testing and which

plaintiff challenges, I conclude that it is reasonably related to legitimate penological interests. As to the first Turner factor, the unauthorized use of drugs in detention facilities by detainees poses a serious threat to prison officials' ability to maintain institutional security. Block v. Rutherford, 468 U.S. 576, 588-89 (1984); Storms v. Coughlin, supra, 600 F. Supp. at 1220 ("[D]rug use among prisoners is a serious, disruptive problem within American prisons"). The stated objectives of Directive 4535 are to "enhance staff and inmate safety," "decrease the demand for drugs inside facilities," and "identify inmate drug abusers so that they can be referred to medical staff for treatment/counseling" (Directive 4535 at § II.B.). Thus, the random drug tests administered pursuant to Directive 4535 are rationally related to a legitimate governmental interest.

As to the second Turner factor, there do not appear to be any alternative means that would allow plaintiff to exercise his limited bodily privacy rights and at the same time allow prison officials to effectively curtail drug use in the inmate population. See Covino v. Patrissi, supra, 967 F.2d at 79 (finding no alternative means allowing inmate plaintiff to exercise bodily privacy rights in context of random visual body-cavity searches).

As to the third Turner factor, Directive 4535 reasonably accommodates plaintiff's limited bodily privacy right

in light of the legitimate penological reasons underlying the urine tests.  The Directive requires that urine be collected by a staff member of the same gender as the inmate being tested, in private, and outside the presence of other inmates and non-participating staff (Directive 4535 at § III.E.2.c.).  <u>See</u> <u>Covnio v. Patrissi</u>, <u>supra</u>, 967 F.2d at 79 (finding reasonable accommodation in context of random visual body-cavity searches where search of inmate plaintiff was conducted in inmate's room with the door closed and only in the presence of the prison staff conducting the search).

Lastly, the fourth <u>Turner</u> factor "is not a 'least restrictive alternative' test, rather it requires the inmate to 'point to an alternative that fully accommodates the prisoner's rights at <u>de</u> <u>minimis</u> cost to valid penological interests.'" <u>Covino v. Patrissi</u>, <u>supra</u>, 967 F.2d at 80, <u>quoting</u>, <u>Turner v. Safley</u>, <u>supra</u>, 482 U.S. at 90-91.  Plaintiff has not suggested any such alternative.  Indeed, plaintiff has not put forth any evidence tending to show that the urine tests administered pursuant to Directive 4535 are unreasonable in any manner.

In sum, plaintiff's urine test was reasonably related to a legitimate penological interest.  Plaintiff's privacy expectations do not outweigh defendants' legitimate security interest in curbing drug use by inmates.  <u>See</u> <u>Thompson v. Souza</u>, 111 F.3d 694, 701 (9th Cir. 1997)(upholding non-random urine

testing of prisoner); <u>Lucero v. Gunter</u>, 17 F.3d 1347, 1349-50 (10th Cir. 1994)(upholding random urine drug testing of prisoner); <u>Forbes v. Trigg</u>, 976 F.2d 308, 312-13 (7th Cir. 1992)(same); <u>Spence v. Farrier</u>, 807 F.2d 753, 755 (8th Cir. 1986)(same).  Thus, the random urine test administered pursuant to Directive 4535 did not violate plaintiff's Fourth Amendment rights.

Accordingly, defendants' motion for summary judgment on plaintiff's Fourth Amendment claim should be granted.

b. Procedural
Due Process Claim[8]

Plaintiff also challenges the procedures utilized in the disciplinary hearing that led to his sixty days segregation (Article 78 Challenge at 5).  Specifically, plaintiff claims that (1) the investigation of his infraction was not commenced within twenty-four hours of the incident; (2) the hearing officer did not summarize the testimony setting forth specific reasons for his finding of guilt; (3) plaintiff was not allowed to review evidence introduced at the hearing; and (4) plaintiff's witnesses were not allowed to testify at the disciplinary hearing (Article

---

[8]Plaintiff does not specify against whom he asserts his procedural due process claim.  Because the Verified Complaint contains allegations regarding Scollo's involvement in plaintiff's disciplinary proceeding but does not contain similar allegations regarding Lewis or William, I interpret the Verified Complaint as asserting this claim against Scollo only.

78 Challenge at 5). Scollo argues that plaintiff fails to establish a protected liberty interest and that, even if plaintiff established a violation of a liberty interest, he fails to show that he was deprived of any process to which he was entitled (Def. Mem. at 12-15).

To establish a due process violation arising from his disciplinary hearing, plaintiff must demonstrate "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process" Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001); accord Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004). "Liberty interests protected by the Fourteenth Amendment may arise from two sources -- the Due Process Clause itself and the laws of the states." El-Shabazz v. Wangenstein, 92 Civ. 7291 (LBS), 1995 WL 489686 at *4 (S.D.N.Y. 1995)(internal quotation marks omitted).

In arguing that plaintiff fails to demonstrate the deprivation of a protected liberty interest, Scollo mistakenly relies on Sandin v. Conner, 515 U.S. 472 (1995). Sandin held that sentenced inmates retained due process protections only with respect to disciplinary punishments that imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra, 515 U.S. at 484. The Court of Appeals for the Second Circuit has held,

however, that <u>Sandin</u> does not apply to pretrial detainees.  <u>See</u>
<u>Iqbal v. Hasty</u>, 490 F.3d 143, 163 (2d Cir. 2007)("<u>Sandin</u> does not
apply to pretrial detainees and . . . , accordingly, pretrial
detainees need not show that an imposed restraint imposes
atypical and significant hardships to state deprivation of a
liberty interest protected by procedural due process."); <u>Benjamin</u>
<u>v. Fraser</u>, <u>supra</u>, 264 F.3d at 188-89; <u>see also</u> <u>Adams v. Galletta</u>,
96 Civ. 3750 (JGK), 1999 WL 959368 at *5 (S.D.N.Y. Oct. 19,
1999)("<u>Sandin</u> concerned the rights of those who had been
convicted and not the rights of pretrial detainees.").  Thus, to
establish a liberty interest, plaintiff is not required to show
that the sixty day punitive segregation he received amounted to
an atypical and significant hardship.

     Unlike sentenced inmates, pretrial detainees have a
liberty interest in being free from punishment prior to
conviction under the Due Process Clause.  <u>Bell v. Wolfish</u>, <u>supra</u>,
441 U.S. at 535.  Thus, a pretrial detainee is entitled to a due
process hearing before prison officials may impose restraints on
the detainee's liberty for disciplinary reasons.  <u>Benjamin v.</u>
<u>Fraser</u>, <u>supra</u>, 264 F.3d at 189; <u>accord</u> <u>Stevenson v. Carroll</u>, 495
F.3d 62, 70 (3d Cir. 2007)(pretrial detainees are entitled to
process before being "confined for disciplinary infractions");
<u>Rapier v. Harris</u>, 172 F.3d 999, 1005 (7th Cir. 1999)("[A]lthough
it is permissible to punish a pretrial detainee for misconduct

while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of procedural protection."); Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996)("[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule."); see also Brims v. Tracy, 93 Civ. 3233 (DC), 1996 WL 153696 at *3 (S.D.N.Y. Apr. 3, 1996)(as a pretrial detainee, plaintiff could not be placed in administrative segregation as punishment for disobeying a direct order without a finding of guilt at disciplinary hearing on the charge).

Here, because plaintiff was a pretrial detainee, he retained a liberty interest in not being placed in punitive segregation without a due process hearing on the charge against him.  Because Scollo relies on Sandin, he mistakenly focuses on the duration of plaintiff's confinement.  Citing Palmer v. Richards, 364 F.3d 60 (2d Cir. 2004), Scollo argues that plaintiff's sixty days in punitive segregation was not an "atypical and significant hardship."  As explained above, Sandin and its progeny are inapplicable here.  Accordingly, the next inquiry is what type of process was plaintiff due and whether he was denied the procedural protections to which he was due.

The Court of Appeals for the Second Circuit has held that a pretrial detainee subject to discipline for an infraction

is entitled to the due process protections set forth in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974). <u>Benjamin v. Fraser</u>, <u>supra</u>, 264 F.3d at 190 ("[T]he procedures required by <u>Wolff</u> apply if the restraint on liberty is imposed for disciplinary reasons."); <u>see also</u> <u>Taylor v. Santana</u>, 05 Civ. 1860 (AKH), 2007 WL 737485 at *4 (S.D.N.Y. Mar. 6, 2007)(punitive restraints on a pretrial detainee's liberty trigger the due process protections outlined in <u>Wolff</u>). In <u>Wolff</u>, the Supreme Court held that inmates facing deprivations of liberty by disciplinary proceedings must be afforded (1) written notice of the charges at least twenty-four hours before any hearing; (2) a written statement of the factual allegations against the inmate; (3) a written statement setting forth the reasons for the disciplinary action taken; (4) and a limited ability to present witnesses and evidence. <u>Wolff v. McDonnell</u>, <u>supra</u>, 418 U.S. at 563-66; <u>see also</u> <u>Benjamin v. Fraser</u>, <u>supra</u>, 264 F.3d at 190.

Here, plaintiff was entitled to the procedural safeguards delineated in <u>Wolff</u>. While it is undisputed that plaintiff was notified by a written statement that he was charged with testing positive for illegal drugs, (<u>see</u> Notice of Infraction), and afforded a disciplinary hearing to contest this charge, (<u>see</u> Notice of Disposition), plaintiff claims in his Verified Complaint that his disciplinary hearing was deficient in

certain respects and, thus, violated his due process rights under the Fourteenth Amendment.

The first three alleged deficiencies -- that (1) the investigation of his infraction was not commenced within twenty-four hours of the incident; (2) the hearing officer did not summarize the testimony setting forth specific reasons for his finding of guilt; and (3) plaintiff was not allowed to review evidence introduced at the hearing -- are easily disposed of because none of these elements are required under Wolff. Wolff v. McDonnell, supra, 418 U.S. at 563-66; Benjamin v. Fraser, supra, 264 F.3d at 190.

However, plaintiff's claim that his witnesses were not allowed to testify during his disciplinary hearing was squarely addressed in Wolff, which held that inmates have a limited right to call witnesses at such hearings, subject to the institutional concerns of prison officials. Wolff v. McDonnell, supra, 418 U.S. at 566.[9]

_____

[9]The Wolff Court recognized that an absolute right to call witnesses during disciplinary proceedings would be untenable given the risk of reprisal and the institutional interest in limiting these hearings to a reasonable duration. Wolff v. McDonnell, supra, 418 U.S. at 566; see also Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)("The right to call witnesses is circumscribed . . . by the penological need to provide swift discipline in individual cases and by the very real dangers in prison life which may result from violence or intimidation.")(internal quotation marks omitted). Consistent with this principle, Directive 6500 permits witnesses to testify, "provided they are reasonably available and [that their]
(continued...)

Scollo contends that plaintiff received all the process he was due because he had notice of the infraction and an opportunity to contest his charge at the disciplinary hearing, evidenced by the Notice of Infraction and Notice of Disposition, both of which are signed by plaintiff. Significantly, the Notice of Infraction, which plaintiff signed, indicates that he did not request any witnesses to testify at his disciplinary hearing. The Notice of Disposition, which was given to plaintiff after his disciplinary hearing and which plaintiff also signed, similarly indicates that no witnesses were called during his hearing. Based on these documents, Scollo concludes that plaintiff received all the process he was due. This argument is unavailing.

Directive 6500 provides detailed procedures governing the calling of witnesses. It states that, even if an inmate does not initially request a witness on the Notice of Infraction, the hearing officer must, nevertheless, ask the inmate whether he wishes to call any witnesses (Directive 6500 § III.C.19). If the inmate waives his right to have witnesses appear, the inmate is required to indicate this on the Notice of Disposition and sign his name (Directive 6500 § III.C.19(a)). Thus, even if plaintiff

---

[9](...continued)
attending the infraction hearing will not be unduly hazardous to institutional safety or correctional goals" (Directive 6500 at § III.C.9(d)).

had initially declined to call witnesses when he signed the Notice of Infraction, Scollo was obliged to ask plaintiff at the hearing whether he wished to call any witnesses and if plaintiff did not so desire, Scollo was to obtain confirmation from plaintiff in writing. On the record before me, it is impossible to conclude whether Scollo did this. Scollo does not address this issue in his papers and does not provide any evidence, such as a transcript, that demonstrates what transpired during plaintiff's hearing. Viewing the record in the light most favorable to plaintiff and drawing all inferences in his favor, I cannot conclude that Scollo has shown that there is no genuine issue of fact that plaintiff did not seek to call any witness. See Giannullo v. City of New York, supra, 322 F.3d at 140-41 ("[W]here the movant fail[s] to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing.")(internal quotation marks omitted).

Accordingly, Scollo's motion for summary judgment on plaintiff's procedural due process claim should be denied.

4. Qualified Immunity

Scollo also argues that he is entitled to summary judgment on plaintiff's procedural due process claim based on the doctrine of qualified immunity (Def. Mem. at 15-18).

A governmental agent who performs a discretionary function may be entitled to qualified immunity from suit for constitutional violations.  As the Court of Appeals for the Second Circuit explained in Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004):

> The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citation and quotation marks omitted).  The doctrine protects officials who "act in ways they reasonably believe to be lawful." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Hence, a defendant is not liable if he did not violate clearly established law or it was objectively reasonable for him to believe that he was not violating clearly established law. Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).
>
> As this Court has held, "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" Anderson v. Recore, 317 F.3d at 197 (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)).  The question is "what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999); see Anderson v. Creighton, 483 U.S. at 640, 107 S.Ct. 3034 ("[T]he right the official is alleged to have violated must have been 'clearly

36

established' in a more particularized, and hence more
relevant, sense:  The contours of the right must be
sufficiently clear that a reasonable official would
understand that what he is doing violates that
right.").  Hence, even assuming a state official
violates a plaintiff's constitutional rights, the
official is protected nonetheless if he objectively and
reasonably believed that he was acting lawfully.  See
Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116
L.Ed.2d 589 (1991) ("The qualified immunity standard
'gives ample room for mistaken judgments' by protecting
'all but the plainly incompetent or those who knowingly
violate the law.'") (quoting Malley v. Briggs, 475 U.S.
335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

See Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003); Anderson

v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); see also Anderson v.

Creighton, 483 U.S. 635, 638-39 (1987); Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982); McCullough v. Wyandanch Union Free Sch.

Dist., 187 F.3d 272, 278 (2d Cir. 1999); Connell v. Signoracci,

153 F.3d 74, 80 (2d Cir. 1998); Brown v. City of Oneonta, 106

F.3d 1125, 1130-31 (2d Cir. 1997), overruled on other grounds,

Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).

A three-part analysis is used to assess the validity of
an assertion of qualified immunity:

A government official is entitled to qualified immunity
from suit for actions taken as a government official if
(1) the conduct attributed to the official is not
prohibited by federal law, constitutional or otherwise;
(2) the plaintiff's right not to be subjected to such
conduct by the official was not clearly established at
the time of the conduct; or (3) the official's action
was objectively legally reasonable in light of the
legal rules that were clearly established at the time
it was taken.

Cuoco v. Moritsuqu, 222 F.3d 99, 109 (2d Cir. 2000); accord Moore v. Andreno, 505 F.3d 203, 214 (2d Cir. 2007); Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007). If the historical facts are in dispute, they must be resolved by the fact finder. Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994).

A pretrial detainee's limited due process right to call witnesses on his behalf during his disciplinary hearing was clearly established in February 2005, the time of plaintiff's hearing. See Wolff v. McDonnell, supra, 418 U.S. at 566; Benjamin v. Fraser, supra, 264 F.3d at 189-90 ("[T]he procedures required by Wolff apply if the restraint on [a pretrial detainee's] liberty interest is imposed for disciplinary reasons."). The holdings in Wolf and Benjamin establish that the contours of plaintiff's due process rights were well defined by both Supreme Court and Second Circuit precedent at the time Scollo conducted plaintiff's disciplinary hearing.

Scollo argues, however, that his actions were objectively reasonable in following Directive 6500's procedures for holding plaintiff's disciplinary hearing (Def. Mem. at 17).

38

Where a right is clearly established, a government official is still entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)(internal quotation marks and citation omitted). In support of his argument that it was objectively reasonable for him to believe that his conduct during plaintiff's disciplinary hearing was lawful at that time, Scollo merely cites Directive 6500 in its entirety; he does not offer any evidence that the procedures in Directive 6500 were, in fact, followed, and, as noted above, there is a question of fact as to whether plaintiff sought to call witnesses at the hearing.  Because Scollo has not provided any evidence from which to evaluate whether he acted in compliance with Directive 6500, Scollo has not shown that he is entitled to summary judgment on the basis of qualified immunity. See Dawes v. Carpenter, 899 F. Supp. 892, 896-97 (N.D.N.Y. 1995)(denying assertion of qualified immunity by prison official who conducted plaintiff's disciplinary hearing because defendant "failed to produce any evidence"; this evidence was "necessary in order to permit the Court to evaluate whether [defendant's] beliefs were objectively reasonable in light of the circumstances.").

Accordingly, Scollo's summary judgment motion to dismiss plaintiff's procedural due process claim on the ground of qualified immunity should be denied.

IV.  Conclusion

For all the foregoing reasons, I respectfully recommend that defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment (Docket Item 20) be granted with respect to plaintiff's Fourth Amendment claim and be denied with respect to plaintiff's procedural due process claim.  If this Amended Report and Recommendation is adopted, the only claim remaining will be plaintiff's procedural due process claim against Scollo.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750,

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         February 20, 2008

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Curtis Mitchell
DIN No. 05-R-2741
Camp Pharsalia
496 Center Road
South Plymouth, New York  13844-6777


Janice C. Silverberg, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York  10007